THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* CHARLES S. JACKSON, Respondent.

*Opinion filed October 28, 1926.*

1. DISBARMENT—*unprofessional conduct need not be established beyond a reasonable doubt.* Although the charge of unprofessional conduct in an information to disbar involves the respondent's complicity in a crime it is not necessary that the proof of the charge establish the attorney's guilt beyond a reasonable doubt, but if the unprofessional conduct is clearly shown by the evidence it is sufficient to disbar.

2. SAME—*when attorney should be disbarred.* On an information to disbar, the question before the court is whether the attorney has been guilty of unprofessional conduct likely to bring the profession into disrepute, and if so, it is the duty of the court to order the attorney's name stricken from the rolls, especially where the attorney's attitude toward his acts indicates want of a proper conception of the ethics of the profession.

INFORMATION to disbar.

JOHN L. FOGLE, (FREDERICK L. FAKE, of counsel,) for relator.

CHARLES S. JACKSON, *pro se.*

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Relator, on leave granted, filed an information to disbar respondent. The cause was referred to a commissioner to take evidence and to report the same with his conclusions. The commissioner has filed his report, finding that the conduct of respondent was dishonorable and unethical and recommending that he be disbarred. Exceptions to such report were filed herein by respondent.

It appears from the evidence that Charles Spatt was the owner of a knitting mill for the manufacture of woolen sweaters. On the night of October 15, 1923, his factory was entered and 2400 pounds of woolen yarns and twenty-two dozen sweaters, valued by him at $6000, were stolen. Two days before the burglary Harry Hoffman, then unknown to Spatt, came into the latter's factory and tried on several sweaters but did not purchase any. A short time after the burglary Hoffman was arrested by the police, and Spatt was called to the jail and there identified him as the man who had been in his store. Spatt testified that he later met Hoffman on the street and that Hoffman admitted to him that he had taken the goods from the store and said that he would return them upon payment of $500, and later, at another meeting, he raised his demand to $1500. Some days after this, Spatt and Floyd Nesbitt, an employee of Spatt, followed Hoffman in an automobile and saw respondent with him. Spatt did not then know respondent. He ascertained that the license number of the car was issued to respondent. Spatt and Nesbitt followed this car for some time on different days and saw respondent and Hoffman together therein on several occasions. At other times Hoffman, alone, had the car. Spatt testified that later respondent called him by telephone and requested that he come to his (respondent's) office and see him concerning the burglary. Spatt and Nesbitt went to respondent's office and a conversation took place there. This con-

versation is the principal matter in dispute, the respondent denying much thereof as it was told by the witnesses for relator. There were present at this meeting, Spatt, his employee, Nesbitt, and respondent. Spatt testified that Jackson called him on the telephone and asked him to come to his office, while Jackson says Spatt called his office and left word with Jackson's office assistant to call Spatt, and that he did call him. Both testify that the matter of the burglary and the return of the stolen goods were discussed in this telephone conversation, and there is no dispute but that both knew that the question to be talked over was the return of the goods and assistance on the part of respondent to that end. Both Spatt and Nesbitt testified that at respondent's office he invited them into his private room; that he said that if Spatt paid him $1500 he could get back 1100 pounds of yarn for him; that when Spatt claimed he had lost 2400 pounds of yarn and twenty-two dozen sweaters Jackson called him a liar and said that he had only lost one hundred sweaters and 1100 pounds of yarn and that because of such claim he could do nothing for him; that Spatt left the office and the next day got out a warrant for Hoffman. Jackson testified before the commissioner that Spatt asked him to help get the goods back; that there was an argument about the size of the loss, but that respondent got the information as to the lower amount of goods stolen from a statement made in the previous telephone conversation between himself and Spatt and that he called Spatt's attention thereto in the office; that respondent told Spatt that he would see what he could do; that he did not ask for money; that Spatt telephoned him the next day asking what he had done for him, and on being told that respondent could not help him, said he would get someone else to handle the matter. About a week after this conversation in respondent's office Spatt and Nesbitt laid the matter before Lieutenant Grady, who sent them over to a judge, where Spatt swore out a warrant for re-

spondent. Grady testified that Spatt told him that Jackson was an attorney but mentioned nothing about his asking for any money. Spatt and Nesbitt both testified that they told Grady concerning the demand for money. On hearing thereafter on both warrants Hoffman waived preliminary examination and was bound over to await the action of the grand jury and the charge against respondent was dismissed.

The transcript discloses substantial discrepancies in the testimony of respondent as given before the commissioner when compared with that before the grievance committee. Before the commissioner respondent testified that he represented Hoffman in but two cases in court before the Spatt burglary; that he did not know that Hoffman was an habitual criminal; that he had known him but two years; that he had been in Hoffman's soft drink parlor but once; that he knew none of the crowd that hung around Hoffman's place; that he had never represented in court the men that were around that place; that he did not tell Spatt in his office that he thought it was the fellows around Hoffman's saloon that had committed the burglary; that Hoffman, before Spatt's visit to respondent's office, had told respondent nothing about the burglary or of a conversation he had had with Spatt concerning a return of the goods; that he did not remember seeing or conversing with Hoffman after Spatt's conversation with respondent. Before the grievance committee he testified that he had represented Hoffman five or six times; that he had known him five or six years; that he sometimes went up to Hoffman's place and had met some of the fellows there; that he had represented some of them in a liquor case; that he knew that Hoffman had been accused of crime on numerous occasions; that he told Spatt in his office that he thought the fellows in Hoffman's saloon committed the burglary and that he was acquainted with some of them and might be able to do something; that Hoffman told him

that he and Spatt had had a conversation on the street concerning the return of his goods; that he was not surprised to find a telephone call from Spatt on his desk; that he talked to Hoffman about a week after Spatt's visit concerning the same. The contradictory answers given tend to impeach respondent as a witness and affect the credibility of his story concerning what took place in his office. The two witnesses for the relator say that respondent demanded money of Spatt to secure the return of the goods stolen, and his denial of that claim is greatly weakened by his testimony on other matters. Frank answers should be given by an attorney in explaining his actions where the charge is as serious as this one.

Respondent argues that the proof of this charge must establish his guilt beyond a reasonable doubt, and that it does not do so in this record. The rule is that the guilt of an attorney charged with unprofessional conduct must be clearly shown by the evidence. Such conduct, if established by the evidence, is sufficient to disbar. The sufficiency of the charge is passed upon when application is made for leave to file the information. We are of the opinion that the truth of the charge in the information is sufficiently established.

Respondent, by his statement that such acts are common practice in the profession, seems to have misconceived the duties and obligations of an attorney at law. The question before this court is whether he has been guilty of unprofessional conduct likely to bring the profession into disrepute. If so, it is the duty of this court to order his name stricken from the roll. The evidence in the record not only establishes that he is guilty of such conduct, but his attitude toward such acts indicates a want of proper conception of the ethics of the profession.

The rule will be made absolute and respondent's name stricken from the roll of attorneys.          *Rule made absolute.*